UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE MITCHELL O/B/O,　　　　　　　　　Case No. 1:14-cv-42
D.M., a minor,
　　　Plaintiff,　　　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　　vs.

COMMISSIONER OF　　　　　　　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　　　　　**RECOMMENDATION**
　　　Defendant.

　　　Michelle Mitchell, on behalf of her son, D.M. (plaintiff), brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response in opposition (Doc. 15).

**I. Procedural Background**

　　　Plaintiff was born in August 2004 and was 8 years old at the time of the administrative law judge's (ALJ) decision. Plaintiff's mother, Michelle Mitchell, filed an application for SSI on his behalf in April 2010, alleging disability due to attention deficit hyperactivity disorder (ADHD) and separation anxiety disorder. (Tr. 198, 202). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before ALJ Samuel A. Rodner. Plaintiff's mother, represented by counsel, appeared and testified on behalf of plaintiff at an ALJ hearing held on May 31, 2012. On August 31, 2012, the ALJ issued a decision denying plaintiff's SSI application. (Tr. 19-33). The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

I. Analysis

### A. Legal Framework for Children's SSI Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.*; 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of SSI benefits:

1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d). An impairment that meets or medically equals the severity of a set of criteria for an impairment in the Listing, or that functionally equals a listed impairment, causes marked and severe functional limitations. 20 C.F.R. § 416.924(d).

In determining whether a child's impairment(s) functionally equal the Listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

2

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Heath and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the Listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

    An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." (*Id.*). An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

    If the child's impairment meets, medically equals, or functionally equals the Listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. 416.924(d)(2).

3

In determining functional equivalence, the ALJ must consider the "whole child." Social Security Ruling 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009). The "whole child" approach to functional equivalence requires the ALJ to consider the following questions:

1. How does the child function? "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments. We consider:

- What activities the child is able to perform,

- What activities the child is not able to perform,

- Which of the child's activities are limited or restricted,

- Where the child has difficulty with activities-at home, in childcare, at school, or in the community,

- Whether the child has difficulty independently initiating, sustaining, or completing activities,

- The kind of help, and how much help the child needs to do activities, and how often the child needs it, and

- Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

2. Which domains are involved in performing the activities? We assign each activity to any and all of the domains involved in performing it. Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities? If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain? We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation.

*Id.* (internal citations omitted). Importantly, SSR 09-01p goes on to provide more detail about the technique for determining functional equivalence but emphasizes:

> [W]e do not require our adjudicators to discuss all of [these] considerations [] in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

*Id.* at 3.

### B. The Administrative Law Judge's Findings

The ALJ made the following findings of fact and conclusions of law:

1. [Plaintiff] was born [i]n August . . . 2004. Therefore, he was a preschooler on April 29, 2010, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. [Plaintiff] has not engaged in substantial gainful activity since April 29, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) (Exhibit 12F) (20 CFR 416.924(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. [Plaintiff] has not been disabled, as defined in the Social Security Act, since April 29, 2010, the date the application was filed (20 CFR 416.924(a)).

(Tr. 22-33).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. [Plaintiff] has less than marked limitation in acquiring and using information. (Tr. 27).

2. [Plaintiff] has marked limitation in attending and completing tasks. (Tr. 28).

5

3. [Plaintiff] has less than marked limitation in interacting and relating to others. (Tr. 29).

4. [Plaintiff] has no limitation in moving about and manipulating objects. (Tr. 31).

5. [Plaintiff] has less than marked limitation in the ability to care for himself. (Tr. 32).

6. [Plaintiff] has no limitation in health and physical well-being. (Tr. 32).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

6

*See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

For his sole assignment of error, plaintiff asserts the ALJ erred in finding that he had "less than marked" limitations in caring for himself and ignored evidence establishing that he has, at a minimum, "marked" limitations in this domain. In support, plaintiff cites to his mother's testimony that he has difficulty with personal hygiene, including not showering or wiping his bottom independently and insisting on wearing the same clothes repeatedly; engages in unsafe behavior, including running into the street in public and cutting his clothes and eyelashes with scissors; and exhibits violent behavior towards his younger sister. Plaintiff maintains that in finding plaintiff had "less than marked" limitations in caring for himself, the ALJ placed too much emphasis on the Teacher Questionnaire completed by his first grade teacher, who found plaintiff had no limitations in caring for himself, because more recent evidence demonstrates that he has exhibited increasing behavior problems. Plaintiff also argues the ALJ failed to fully address his mother's testimony describing plaintiff's myriad limitations in self-care, including her claims that plaintiff has daily crying outbursts and that it is difficult to get him to take his medications. (Doc. 12 at 10-12).

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state. 20 C.F.R. § 416.926a(k). This includes how well a child satisfies

7

his physical and emotional wants and needs in appropriate ways; how the child copes with stress and changes in the environment; and how well the child takes care of his own health, possession, and living area. *Id.* The regulations further provide:

> (i) Caring for yourself effectively, which includes regulating yourself, depends upon your ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety. It is characterized by a sense of independence and competence. The effort to become independent and competent should be observable throughout your childhood.
>
> (ii) Caring for yourself effectively means becoming increasingly independent in making and following your own decisions. This entails relying on your own abilities and skills, and displaying consistent judgment about the consequences of caring for yourself. As you mature, using and testing your own judgment helps you develop confidence in your independence and competence. Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age.
>
> (iii) Caring for yourself effectively requires you to have a basic understanding of your body, including its normal functioning, and of your physical and emotional needs. To meet these needs successfully, you must employ effective coping strategies, appropriate to your age, to identify and regulate your feelings, thoughts, urges, and intentions. Such strategies are based on taking responsibility for getting your needs met in an appropriate and satisfactory manner.
>
> (iv) Caring for yourself means recognizing when you are ill, following recommended treatment, taking medication as prescribed, following safety rules, responding to your circumstances in safe and appropriate ways, making decisions that do not endanger yourself, and knowing when to ask for help from others.

20 C.F.R. § 416.926a(k)(1). The regulations provide that preschool children (age 3 to attainment of age 6) should want to independently take care of many of their own physical needs, *e.g.*, putting on shoes, getting a snack, and want to try accomplishing things they cannot do fully, *e.g.*, tying shoes, taking a bath. 20 C.F.R. § 416.926a(k)(2)(iii). Preschool children should also begin

8

understanding how to control behaviors that are not good for them, such as crossing the street without an adult. *Id.* School-age children (age 6 to attainment of age 12) should be independent in most day-to-day activities, *e.g.*, dressing and bathing oneself, though they may still need reminders to do these things routinely. 20 C.F.R. § 416.926a(k)(2)(iv). School-age children should also begin to demonstrate consistent control over their own behavior and avoid unsafe behaviors. *Id.*

In determining that plaintiff has "less than marked" limitation in the domain of caring for himself, the ALJ addressed plaintiff's mother's testimony regarding plaintiff's personal hygiene but found that "[n]eeding assistance and reminders to bathe does not seem out of the ordinary for a child [his] age." (Tr. 32). The ALJ noted there was no evidence corroborating plaintiff's mother's testimony that plaintiff is unable to wipe himself after bowel movements or that he avoids having bowel movements at school. (*Id.*). The ALJ further noted Ms. Doty's report that plaintiff has no issues in caring for himself. (*Id.*). The ALJ's finding is supported by substantial evidence.

The medical opinion evidence in the record substantially supports the ALJ's determination that plaintiff has "less than marked" limitations in caring for himself. On September 11, 2009, plaintiff was evaluated by Katie Lackner, M.A., a psychological assistant. (Tr. 310-14). Ms. Lackner was unable to assess plaintiff's cognitive functioning due to his inability to concentrate on testing. (Tr. 313). However, based on observations during the evaluation and the information related by plaintiff's mother, Ms. Lackner determined that plaintiff was extremely inattentive, hyperactive, and impulsive. (*Id.*). Ms. Lackner determined

9

that plaintiff displayed oppositional and whiny behaviors and may be anxious and shy in unfamiliar settings, but she opined that this would likely subside with treatment for plaintiff's ADHD symptoms and counseling. (*Id.*). Ms. Lackner diagnosed plaintiff with ADHD and assigned him a Global Assessment of Functioning (GAF) score of 51.[1]

On November 19, 2009, James P. Simcoe, M.D., plaintiff's treating physician, authored a letter for purposes of securing additional housing for plaintiff's family wherein he reported treating plaintiff for severe ADHD and behavioral problems. Dr. Simcoe opined that given plaintiff's violent behavior towards his younger sibling, it would be beneficial to the family's mental health situation to have an additional bedroom. (Tr. 316).

Plaintiff's medical and education records were reviewed twice by state agency reviewing physicians, psychologists, and speech pathologists. In June and July 2010, Kristen Haskins, Psy.D., Melissa Hall, M.A., C.C.C./S.L.P., and Malika Haque, M.D., reviewed the records, including the results of Ms. Lackner's psychological evaluation, Dr. Simcoe's November 2009 letter, and Dr. Simcoe's treatment records.[2] (Tr. 98-104). Theses reviewing sources opined that

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.* at 32.

[2] This review was based on Dr. Simcoe's treatment notes from February 2008 to May 2010. (Tr. 322-46). The pertinent records include March 2009 reports of plaintiff's attention difficulties and behavioral problems, including refusing to listen to teachers and his parents. (Tr. 331). Dr. Simcoe noted that plaintiff had difficulty with cooperation during the exam and opined that this had less to do with ADHD than with discipline, but testing for ADHD was ordered. (*Id.*). Plaintiff was prescribed Adderall by Dr. Simcoe in September 2009. (Tr. 329). The following month, plaintiff's mother reported that the Adderall helped with plaintiff's attention and calming him down, but that he still had a lot of anger and negativity. (Tr. 328). Dr. Simcoe stopped Adderall and prescribed

10

plaintiff had no limitation in caring for himself. (Tr. 103). Pursuant to plaintiff's mother's reports that plaintiff's condition had worsened greatly over the Summer of 2010, the record was reviewed on reconsideration by Katherine Fernandez, Psy.D., Karen Carver, M.A., C.C.C./S.L.P., and John L. Mormol, M.D. (Tr. 106-15). Based on review of additional evidence from plaintiff's teachers regarding plaintiff's problems with frustration, judgment, anger, and aggressiveness, discussed further *infra*, these sources opined that plaintiff had a "less than marked" limitation in caring for himself. (Tr. 113).

On May 15, 2012, Dr. Simcoe wrote a letter wherein he reported treating plaintiff for ADHD and ODD. Dr. Simcoe reported that plaintiff shows symptoms of easy distractibility and pulsivity; is disruptive in the classroom and on the bus; refuses to do his homework; and exhibits defiant disorder by running away from his parents in public places and ignoring directive behavior. Dr. Simcoe opined that plaintiff "is severely impaired by these problems and would benefit from extra care and tutoring, continued therapy, and family therapy." (Tr. 464).

The above medical evidence substantially supports the ALJ's determination that plaintiff has "less than marked" limitation in caring for himself. There is no medical source opinion in the record that is inconsistent with the ALJ's finding or that indicates plaintiff has greater

---

Strattera. (*Id.*). Later that month, Dr. Simcoe prescribed plaintiff Ritalin. (Tr. 327). In December 2009, plaintiff's mother reported to Dr. Simcoe that the Strattera caused too many side effects and that the Ritalin prescription was not covered by insurance. (Tr. 326). Dr. Simcoe prescribed a reduced dose of Adderall. (*Id.*). Plaintiff was examined by Dr. Simcoe in May 2010 for follow-up. (Tr. 323). Plaintiff's mother reported no side effects from the Adderall other than reduced appetite and further stated that plaintiff's behavior, hyperactivity, concentration, and anxiety were better. (*Id.*). However, she reported plaintiff was still having insecurity and fear issues, and was inappropriately aggressive during play. (*Id.*). Dr. Simcoe reported that plaintiff presented as "a typical 5-year-old being very inquisitive and wants to know everything in the exam room but is not unusually hyper. He is appropriate in his responses although very vague." (*Id.*).

11

limitations in this domain. While plaintiff cites to Dr. Simcoe's May 2012 letter as evidence supporting greater limitation, *see* Doc. 12 at 10, Dr. Simcoe's opinion states only that plaintiff's ADHD and ODD, as found by the ALJ, are severe impairments. *See* Tr. 464. In the absence of any contradictory medical opinion evidence, the ALJ's finding that plaintiff has "less than marked" limitation in the domain of caring for himself is substantially supported by the opinions of the reviewing physicians, psychologists, and speech pathologists.

Likewise, the ALJ's finding is substantially supported by the reports from plaintiff's teachers. Plaintiff's kindergarten teacher, N.A. Hughes, completed a Questionnaire in July 2010. (Tr. 218-23). Mr. Hughes reported that plaintiff has difficulties paying attention or maintaining concentration in class; is occasionally hyper; fails to complete class work; and has extreme mood swings. (Tr. 218-19). Mr. Hughes further reported that plaintiff is very dependent and frequently aggressive with other students. (Tr. 219). When asked if plaintiff is able to perform personal hygiene, Mr. Hughes responded "Just learned to wipe bottom." (Tr. 219).

In October 2010, Amanda Imbus, a teacher who taught plaintiff for two weeks, completed a Teacher Questionnaire provided by the Social Security Administration. (Tr. 235-44). Ms. Imbus reported that plaintiff was doing average work so far but when motivated he "does great work!!" (Tr. 236). Ms. Imbus reported that plaintiff had problems in the domain of caring for himself. (Tr. 240). Specifically, she reported that plaintiff had slight problems with being patient; identifying and appropriately asserting his emotional needs; responding appropriately to changes in his own mood; and knowing when to ask for help. (*Id.*). Ms. Imbus further reported that plaintiff had an obvious problem with appropriately handling frustration and

a serious problem with using good judgment regarding personal safety and dangerous circumstances. (*Id.*). Ms. Imbus explained that plaintiff "almost tried to cut a girls hair sitting next to him. Teacher caught this before it happened. He stopped himself also before I said anything." (*Id.*). Notably, Ms. Imbus reported that plaintiff had no problems with taking care of his personal hygiene; caring for his physical needs; cooperating in taking needed medications; or using appropriate coping skills to meet the daily demands of the school environment. (*Id.*).

Plaintiff's first grade teacher, Ms. Doty, completed a Teacher Questionnaire provided by the Social Security Administration in January 2012. (Tr. 285-92). Ms. Doty reported that she taught plaintiff for six hours a day, five days a week, and had known plaintiff for four months. (Tr. 285). Ms. Doty reported that plaintiff had no problems in the domain of caring for himself and provided the following narrative statement:

> [Plaintiff] cares for himself well at school. He is patient and cooperating with others. He may resist occasional[l]y, but not in an inappropriate manner. He follows through more than 90% of the time. [Plaintiff] feels it necessary to ask for help to complete assignments frequently. I don't mind, because it helps him stay focused.
>
> One concern – [plaintiff] fears getting in 'trouble' at school. He frequently asks, 'Am I being good?' We've begun to make that a question he can answer himself by thinking about his choices that day. He appears to be preoccupied with being in trouble a lot.

(Tr. 289).

The ALJ considered the reports from plaintiff's teachers and gave "great weight" to Ms. Doty's assessment because it was completed following four months of daily interactions with plaintiff. (Tr. 24, 26). Ms. Imbus' assessment was given "less weight" because she had only

13

known plaintiff for two weeks at the time she completed the Questionnaire. (*Id.*). The ALJ determined that although Ms. Doty did not believe plaintiff had any limitations in caring for himself, the record as a whole, especially plaintiff's mother's testimony, supported a finding that plaintiff had some, but "less than marked" limitations in caring for himself. (Tr. 32).

Plaintiff argues the ALJ placed too much emphasis on Ms. Doty's opinion given that she had only taught plaintiff for four months at the time of completing the assessment and because his condition subsequently worsened. (Doc. 12 at 10). Plaintiff does not cite to any evidence from another teacher or medical professional that shows plaintiff had greater limitations in caring for himself than those found by the ALJ.[3] Further, plaintiff's argument ignores the fact that although Ms. Doty reported plaintiff had no limitations in caring for himself, the ALJ found "less than marked" limitations in this domain based on the medical opinions of the state agency reviewers and the reports of plaintiff's mother. Given the record evidence before the ALJ, the Court finds the ALJ's decision is supported by substantial evidence.

Insofar as plaintiff contends the ALJ improperly ignored evidence or inadequately addressed his mother's testimony regarding his limitations in caring for himself, the Court

---

[3] Plaintiff asserts the record evidence supports his mother's testimony that he deteriorated after Ms. Doty completed the Questionnaire. (Doc. 12 at 10, citing Tr. 49, 283, 405, 411, 464). The evidence plaintiff relies on does not establish that he suffers from "marked limitations" in caring for himself. *See* Tr. 405 (a March 2, 2012 treatment note from plaintiff's school social worker noting plaintiff's problem with defiance and providing goals, including learning to implement good child behavioral management skills); Tr. 411 (March 12, 2012 treatment notes reflect that the social worker found plaintiff had made moderate progress in learning to manage his anger, moderate progress with learning to be respectful and cooperative, moderate progress with learning problem-solving and coping skills, and significant progress in developing age-appropriate connections with his peers based on his mother's reports); Tr. 464 (as noted above, the May 2012 letter from Dr. Simcoe does not identify any specific limitations but simply provides that his ADHD and ODD are severe impairments). To the extent plaintiff cites to the December 29, 2011 letter written by plaintiff's mother to Ms. Doty and Amanda White regarding plaintiff being unable to take care of his own personal hygiene (Tr. 283) to support his claim of greater limitations in this domain, as noted by the ALJ, there is simply no corroborating evidence in the record regarding this issue. *See* Tr. 32.

14

disagrees. The ALJ found that plaintiff's mother's statements regarding the severity of his limitations in caring for himself were not fully credible because they were inconsistent with the medical evidence and reports from plaintiff's teachers discussed *supra*. (Tr. 25). Plaintiff's failure to challenge this credibility finding amounts to a waiver. *See McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (and cases cited therein) (arguments in social security appeal not raised or supported in more than a perfunctory manner may be deemed waived). Further, to the extent plaintiff relies on his mother's reports of plaintiff's aggressiveness and inability to make friends with his peers, plaintiff appears to be conflating the domain of caring for oneself with the domain of interacting and relating with others. *See Hawthorne ex rel. K.H. v. Colvin*, No. 1:13-cv-1497, 2014 WL 2920811, at *5-6 (N.D. Ohio June 27, 2014).

The Court acknowledges that the testimony and reports of plaintiff's mother support a finding that, at least when plaintiff is at home, he exhibits limitations in caring for himself that were not adopted by the ALJ. Nevertheless, because the ALJ's finding that plaintiff has "less than marked" limitations in this domain is substantially supported by the medical evidence and teachers' reports of record, it must be upheld, even if this Court would have arrived at a different conclusion based on the same evidence. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). Plaintiff's sole assignment of error should be overruled.

### III. Conclusion

For the reasons stated herein, the undersigned recommends that the ALJ's decision be

**AFFIRMED** and that this matter be closed on the docket of the Court.

Date: 1/22/15

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE MITCHELL O/B/O,
D.M., a minor,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-42

Barrett, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).